SANTA CLAUS INDUSTRIES, INC., Plaintiff-Appellant, v. THE FIRST NATIONAL BANK OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 1—89—2269

Opinion filed June 28, 1991.

Shefsky & Froelich, Ltd., of Chicago (Joel J. Sprayregen and William H. Gifford, Jr., of counsel), for appellant.

Lynn A. Goldstein and Cynthia H. Hyndman, both of First National Bank of Chicago, of Chicago, for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Santa Claus Industries, Inc. (SCI), appeals from the trial court's order which granted the section 2—619 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—619) filed by defendant, the First National Bank of Chicago (FNBC), dismissing, with prejudice, SCI's complaint for accounting and discovery. On appeal, SCI contends that: (1) the trial court incorrectly found that SCI's accounting action had accrued in 1978 and, thus, was barred by the five-year statute of limitations; and (2) FNBC had fraudulently concealed facts from SCI, thereby tolling the running of the limitations period. For the following reasons, the judgment of the trial court is affirmed.

The record sets forth the following facts relevant to this appeal. SCI's accounting action was predicated on a workout loan executed in April 1975 by SCI, Illinois J.P. & Company, Inc. (JP), Technical Publishing of Illinois, Inc. (TPI), and FNBC. A brief history of the relationship of these parties clarifies the terms of the workout loan. Prior to the workout loan, SCI and JP had a debtor-creditor relationship with FNBC. SCI also alleges that FNBC owned 20% of its stock. The record indicates that at one point in 1970, SCI owed FNBC in excess of $3 million, and had a negative net worth of $1 million. However, the record does not indicate whether SCI owed any money to FNBC at the time the workout loan was negotiated. With respect to JP, at the time of the workout loan, JP owed FNBC approximately $1.8 million, partially secured by 50,000 shares of Digest Books stock owned by JP. JP's loan was in default.

Pursuant to the terms of the April 1975 workout loan, FNBC agreed to accept a note from JP in the amount of $750,000, payable on July 1, 1982, with no interest, as settlement of JP's $1.8 million debt. SCI then agreed to purchase the assets of JP, including the stock pledged to FNBC, and to assume JP's obligation to FNBC. SCI also guaranteed the indebtedness from JP to FNBC. FNBC then released its interest in the Digest Books stock and SCI sold the stock to TPI in exchange for TPI's note in the amount of $750,000, with interest, dated April 2, 1975 (the TPI Note). Pursuant to the terms of the TPI Note, TPI was to pay the interest quarterly, commencing July 15, 1975, and to pay the principal in five equal annual installments, commencing April 2, 1976. Payments were to be made at FNBC's offices. SCI then assigned the TPI Note to FNBC, which was to collect TPI's payments and apply them to the debt assumed by SCI. In effect, SCI's assumption of JP's debt was consideration between SCI and JP for the sale of JP's assets. SCI's subsequent assignment of the TPI Note to FNBC was consideration between SCI and FNBC for FNBC's release of its security interest in the Digest Books stock. FNBC opened a new account specifically for the receipt of interest and principal payments on the TPI Note. Pursuant to the record, the TPI Note was prepaid on January 19, 1978. The total amount collected, including interest, was $864,948.99.

In 1984, SCI and FNBC entered into an agreement whereby SCI was to buy back its own shares from FNBC. SCI made its final payment on the buy back in 1987, at which time FNBC returned the shares. Subsequently, on September 29, 1988, SCI filed a complaint for accounting and discovery against FNBC. In its complaint, SCI alleged that FNBC had refused to account for all of the interest payments it had received from TPI on the TPI Note and had refused to pay over to SCI all of the interest it had received. In response, FNBC filed a section 2—615 motion (Ill. Rev. Stat. 1989, ch. 110, par. 2—615) to dismiss on the grounds that SCI had assigned all of its interest in the TPI Note to FNBC and that SCI had no claim to the interest payments. The trial court denied FNBC's section 2—615 motion. FNBC then filed a section 2—619 motion to dismiss, arguing that SCI's accounting action had accrued at the very latest in April 1980, when, pursuant to the terms of the TPI Note, the final interest payment was due, and that the action was barred by the five-year statute of limitations set forth in section 13—205 of the Code of Civil Procedure (the Code) (Ill. Rev. Stat. 1989, ch. 110, par. 13—205).

In response, SCI filed a memo in opposition, in which it argued that: (1) pursuant to the terms of the assignment of the TPI Note

from SCI to FNBC, FNBC was not entitled to retain any payments made by TPI in excess of $750,000; (2) although the five-year limitations period set forth in section 13—205 of the Code applied to the cause of action, the cause of action did not accrue until May 5, 1989, the date FNBC had produced the payment history on the TPI Note; (3) if the action had accrued in 1978, the limitations period had been tolled by FNBC's fraudulent concealment of the relevant facts regarding TPI's interest payments; and (4) a fiduciary relationship existed between SCI and FNBC which mandated that FNBC account to SCI for the payments received from TPI.

In support of its claim of fraudulent concealment, SCI attached the affidavit of Norman Cohn, its president, who stated that in late 1978/early 1979, he had met with Robert Heymann, a senior commercial loan officer at FNBC, and had inquired as to whether TPI had paid anything in excess of $750,000 to FNBC. Heymann allegedly told Cohn not to worry and that he had received everything that he was supposed to receive. In support of its claim, that a fiduciary relationship existed between itself and FNBC, SCI alleged that, at the time it had assigned the TPI Note to FNBC, FNBC was SCI's largest creditor; FNBC owned 20% of SCI's stock; and FNBC "effectively directed the major decisions" made by SCI.

In its reply to SCI's memo in opposition, FNBC argued that the essence of the assignment of the TPI Note by SCI to FNBC was that in return for principal payments of $750,000 and interest payments of approximately $114,000, FNBC would forgive a $1.8 million debt and would release its security interest in 50,000 shares of Digest Books stock. FNBC argued that, when SCI assigned the TPI Note, SCI gave up nothing and undertook no obligation because its guarantee limited recourse by FNBC to an action against TPI. FNBC further denied any fraudulent concealment or fiduciary relationship, and attached the affidavit of Robert Cripe, human resources officer of FNBC and manager of pension administration, who stated that, pursuant to FNBC's personnel file, Robert Heymann, the loan officer to whom Cohn had allegedly spoken in late 1978/early 1979, had left FNBC's employ on August 30, 1974, and had died on April 26, 1985. FNBC then filed a motion to strike Norman Cohn's affidavit and a motion for sanctions.

Following a hearing on the motions, the trial court denied FNBC's motions to strike the affidavit and for sanctions, but granted the section 2—619 motion to dismiss with prejudice, finding that the loan officer's statement to SCI's president in late 1978/early 1979 "would clearly put any sophisticated businessman, and that's what these people are, on notice that the matter was over with and that

any disagreement on that point was ripe." SCI's timely appeal followed.

■■ Initially, in reliance on *Conway v. Conners* (1981), 101 Ill. App. 3d 121, 427 N.E.2d 1015, SCI argues that the statute of limitations is not a defense to an accounting action. However, SCI's reliance on *Conway* is misplaced. Although an accounting was one of seven forms of relief requested by the plaintiff in *Conway*, the court characterized plaintiff's lawsuit as a stockholders' derivative action, which sounds in equity and for which the statute of limitations is not a bar. (101 Ill. App. 3d at 124.) By contrast, the cause of action in the present case is an accounting action, which sounds in both law and equity and for which the statute of limitations has long been held to be a valid defense. *Pratl v. Hawthorn-Mellody Farms Dairy, Inc.* (1977), 53 Ill. App. 3d 344, 368 N.E.2d 767. See also *Schlossberg v. Corrington* (1980), 80 Ill. App. 3d 860, 400 N.E.2d 73.

■■ SCI next argues that the trial court erred in granting FNBC's section 2—619 motion to dismiss based on its determination that SCI's accounting action had accrued in 1978 and, thus, was barred by the five-year statute of limitations. As a general rule, a section 2—619 motion is properly allowed only when it raises an affirmative matter which negates plaintiff's cause of action completely or when it refutes crucial conclusions of law or conclusions of material fact that are unsupported by allegations of specific facts. On review, although the appellate court is limited to a consideration of the legal questions presented by the pleadings, it is not required to defer to the trial court's reasoning. Instead, it may affirm a dismissal of a complaint on any grounds supported by the record. (*Miranda v. Jewel Cos.* (1989), 192 Ill. App. 3d 586, 548 N.E.2d 1348.) In the present case, we affirm the trial court's dismissal of SCI's complaint, but disagree with the trial court's finding that SCI's cause of action accrued in late 1978/early 1979.

■■■ Neither SCI nor FNBC disputes the applicability of the discovery rule, which provides that the relevant statute of limitations begins to run when a person knows or reasonably should have known of his injury and also knows or reasonably should have known that it was wrongfully caused. (*Knox College v. Celotex Corp.* (1981), 88 Ill. 2d 407, 430 N.E.2d 976.) The term "wrongfully caused" does not connote knowledge of the existence of a cause of action. (88 Ill. 2d at 416.) Instead, it is a general or generic term, signifying the point at which the injured person has sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. (88 Ill. 2d at 416.) At that

point, the party is obligated to inquire further to determine whether an actionable wrong was committed. (*Nolan v. Johns-Manville Asbestos* (1981), 85 Ill. 2d 161, 171, 421 N.E.2d 864.) Generally, the determination as to when an injured party knows or reasonably should have known of his injury and that it was wrongfully caused is a question of fact. However, if it is apparent from the undisputed facts that only one conclusion can be drawn, the determination is one of law to be made by the court. *Witherell v. Weimer* (1981), 85 Ill. 2d 146, 156, 421 N.E.2d 869.

In the present case, SCI and FNBC have vacillated throughout the proceedings as to the date SCI's cause of action accrued. In its memo in opposition filed in the trial court, SCI argued that the cause of action accrued on May 5, 1989, the date FNBC had produced the payment history on the TPI Note in response to SCI's discovery request in this action. However, in its brief on appeal, SCI contends that the cause of action accrued in 1987 when its relationship with FNBC terminated and FNBC allegedly refused to provide SCI with information as to the amount received from TPI as payment on the TPI Note. Similarly, in its section 2—619 motion filed in the trial court, FNBC claimed that SCI's action accrued "at the very latest" in April 1980, when the final interest payment on the TPI Note was scheduled to be made. Later, in its reply to SCI's memo in opposition, FNBC argued that the limitations period began to run "at the very latest" in January 1978 when the final payment under the TPI Note was made. Then, in its brief on appeal, FNBC argues that the cause of action accrued in late 1978/early 1979 when SCI's president had his conversation with a loan officer at FNBC.

▪ In our view, FNBC defeated its own argument that the cause of action accrued in late 1978/early 1979 when it filed its counteraffidavit which effectively negated the affidavit of SCI's president regarding his late 1978/early 1979 conversation with Robert Heymann. FNBC's counteraffidavit established that the conversation with Heymann could not have taken place because Heymann was not employed by FNBC at that time. As a result, whether the conversation took place was a disputed material fact which could not support a decision to dismiss the cause of action as a matter of law. *Consumer Electric Co. v. Cobelcomex, Inc.* (1986), 149 Ill. App. 3d 699, 501 N.E.2d 156.

▪ However, the terms of the TPI Note are not disputed, and, in our view, based on these terms, only one conclusion can be drawn: SCI's cause of action accrued in April 1980, when the final payment under the TPI Note was due. The record indicates that SCI had a copy of the TPI Note and was on notice as to its terms, which in-

cluded a payment schedule. Even if SCI did not know in late 1978/
early 1979 that TPI had prepaid its obligation under the TPI Note, it
knew that TPI was obligated to make quarterly interest payments,
commencing July 15, 1975, and it knew that the TPI Note was due
and payable in April 1980. Therefore, when SCI never received any
interest payments by April 1980, it knew or should have known that
it had been injured and that the injury had been wrongfully caused.
Pursuant to section 13—205 of the Code, SCI had five years from that
date within which to file its accounting action.

■ Our decision that SCI's cause of action accrued in April 1980
obviates the need to address SCI's contention that the statement by
FNBC's loan officer in late 1978/early 1979 was an affirmative act by
FNBC to fraudulently conceal from SCI facts pertinent to TPI's pay-
ments on the TPI Note, and acted to toll the running of the limita-
tions period. However, our decision does not obviate the need to ad-
dress SCI's contention that FNBC's silence as to the amount of
interest payments paid by TPI constitutes fraudulent concealment be-
cause a fiduciary relationship existed between SCI and FNBC. As a
general rule, a fiduciary relationship does not exist between a guaran-
tor-creditor or between a debtor-creditor as a matter of law. (*Farmer
City State Bank v. Guingrich* (1985), 139 Ill. App. 3d 416, 487 N.E.2d
758.) SCI is correct that a fiduciary relationship can exist between a
guarantor-creditor under certain circumstances. (*Farmer City State
Bank v. Guingrich*, 139 Ill. App. 3d 416, 487 N.E.2d 758.) However,
SCI failed to allege the existence of such circumstances in its com-
plaint.

■ The burden of proving the existence of a fiduciary relation-
ship lies with the party seeking relief. Where the alleged relationship
does not exist as a matter of law, the plaintiff must plead facts from
which a fiduciary relationship arises. (*Farmer City State Bank v.
Guingrich*, 139 Ill. App. 3d 416, 487 N.E.2d 758.) For example, the
party seeking to establish the relationship must show that he placed
trust and confidence in another so that the other gained influence and
superiority over him. This degree of trust and confidence can be
shown by such factors as degree of kinship, age disparity, health,
mental condition, education, business experience, and extent of reli-
ance. *Farmer City State Bank v. Guingrich*, 139 Ill. App. 3d 416, 487
N.E.2d 758.

■ In the present case, SCI alleged nothing more than a debtor-
creditor relationship with FNBC in its complaint. Count I of SCI's
complaint stated that on or about April 2, 1975, SCI purchased all of
the assets of JP and assumed the obligations of a promissory note JP

had executed in favor of FNBC; FNBC held 50,000 shares of stock in Digest Books, Inc., as collateral for JP's note; on or about April 2, 1975, FNBC released the stock; on or about April 2, 1975, SCI sold the stock to TPI for $750,000, paid for in the form of a secured, non-negotiable note; TPI was to make interest payments on the note to SCI; SCI believes TPI paid the interest to FNBC; and FNBC refused to account for the interest payments. Count II addressed SCI's discovery request. As the aforementioned indicates, SCI has failed to allege any facts which would give rise to a fiduciary relationship between itself and FNBC. Although SCI did argue in its memo in opposition that FNBC owned 20% of SCI's stock and directed SCI in its major business decisions, more than bare statements are required. (*De Witt County Public Building Comm'n v. County of De Witt* (1984), 128 Ill. App. 3d 11, 469 N.E.2d 689.) Accordingly, we find that SCI failed to state a fraudulent concealment claim predicated on a fiduciary relationship.

For the aforementioned reasons, the judgment of the trial court is affirmed.

Affirmed.

MANNING, P.J., and BUCKLEY, J., concur.