967 F.2d 1115
 Bernard POMMIER, individually and as a Beneficiary of Land
Trust Number 959 of City National Bank of
Kankakee, Plaintiff-Appellant,
v.
PEOPLES BANK MARYCREST (an Illinois Banking Corporation),
Donald E. Curry, individually and as an officer of Peoples
Bank Marycrest, and James Regnier, individually and as an
officer of Peoples Bank Marycrest, Defendants-Appellees.
 No. 91-1093.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 15, 1992.
Decided July 1, 1992.
 
 1
 Ellen R. Domph, Robert S. Bailey (argued), Chicago, Ill., Robert J. Waaler, Waaler & Evans, Champaign, Ill., for plaintiff-appellant.
 
 
 2
 Christopher W. Bohlen (argued), Michael Kramer, Blanke, Norden, Barmann & Bohlen, Kankakee, Ill., Vincent P. Paulauskis, Bourbonnais, Ill., for defendants-appellees.
 
 
 3
 Before CUMMINGS and POSNER, Circuit Judges, and WILL, Senior District Judge.*
 
 
 4
 WILL, Senior District Judge.
 
 
 5
 Mr. Pommier is the beneficiary of a land trust. The property that was the corpus of the trust was lost to a mortgage foreclosure, making Pommier's beneficial interest worthless. He filed suit against Peoples Bank of Marycrest and two bank officers, Donald Curry and James Regnier (hereinafter referred to as "Peoples Bank"). Pommier had multiple claims against the defendants, which were either dismissed or lost on summary judgment. On appeal he claims there are two bases of liability on which he is entitled to go to trial: breach of fiduciary duty, and breach of an implied covenant of good faith. This is a diversity case[1] in which Illinois law applies.[2] In reviewing the trial court's grant of summary judgment, we must view all facts in the light most favorable to Pommier. We affirm the district court's actions.
 
 Facts
 
 6
 In 1962 Pommier established land trust # 959 at the City National Bank. Included in this trust was title to property in Kankakee on which he later built the "East Ridge Apartments." A first mortgage on the property was held by Marycrest Savings & Loan, now Crest Savings. In 1972 Pommier borrowed $350,000 from Peoples Bank, through a loan guaranteed by the Small Business Administration. The collateral for this loan was an assignment of Pommier's beneficial interest in the land trust and an assignment of rents from the apartment buildings. This was, in effect, a second mortgage on the property.
 
 
 7
 In 1973 Peoples Bank was unable to renew the loan, for reasons which are disputed, but irrelevant to this case. Since Pommier could not pay off the loan, Peoples Bank asked the SBA to pay on the guarantee. Peoples Bank received payment on 90% of the outstanding loan from the SBA, remaining exposed on the other 10%. There is a dispute over whether Peoples Bank retained possession of the collateral, or whether it was released to the control of the SBA after the 90% payment was received. We will assume that Peoples Bank retained the collateral for the purposes of deciding this appeal.[3]
 
 
 8
 In 1974 Pommier, with the agreement of the SBA and Peoples Bank, directed the trustee of the land trust to sell the apartment building to the Funk family for $615,000. The Funks and the trustee (on behalf of Pommier's trust) executed "Articles of Agreement" which were essentially a conditional land sale contract. Under the contract the Funks made a down payment of $42,000, and monthly payments of $4800 per month, with the balance due within ten years. Although not explicit on the face of the agreement, the arrangement provided for payment of Pommier's debts to three lenders. The Funks sent their monthly payment to Crest Savings, holder of the first mortgage on the property. Crest Savings deducted its monthly payment, and sent the balance to Peoples Bank. Peoples Bank, acting as a collection agent for the SBA, forwarded the entire payment from Crest to the SBA. The SBA accepted the payment, and remitted 10% to Peoples Bank towards payment of its share of Pommier's outstanding debt. One clause in the agreement prohibited sale of the property or of the Funks' rights under the contract to anyone without the agreement of Pommier, through the trustee.
 
 
 9
 The Funks made payments through the end of 1983, keeping Pommier's accounts current with the three creditors. In late 1982 or early 1983 Stephen Funk contacted Pommier about possibly selling the apartments to a third party. The proposed arrangement would require Pommier to take a second mortgage, which was unacceptable to him. He did, however, say that he would consider other types of arrangements. Funk told him nothing more about a sale of the property, but did negotiate an extension agreement with him. The final payments under the original Articles of Agreement were due in June, 1984. In May, however, the Funks and Pommier executed an extension agreement continuing the same payment to the banks to cover Pommier's debt, and adding an $800 per month payment directly to Pommier. The trustee did not execute this agreement, and no banks were notified or involved in this extension.
 
 
 10
 It was not until the fall of 1984, when Pommier was informed by Crest Savings that the first mortgage was in default, that he discovered that the Funks had executed a sales agreement, with a limited partnership known as Horizon Ventures, in November 1983 that purported to transfer all of the Funks' interest in the apartment buildings. Peoples Bank had allowed the Funks to use a room at the bank for the final signing of papers on this deal. In December 1983, Peoples Bank loaned Horizon Ventures $100,000, using as collateral the personal notes of several limited partners, and an assignment of rents in the property. The purpose of the loan may have been to renovate the apartments. Following the sale of their interest in the property to Horizon, the Funks stopped making payments. Horizon Ventures was unable to make the required payments, and the loans went into default. In 1985 Crest Savings foreclosed on the property, and Horizon Ventures filed for bankruptcy. The SBA and Peoples Bank wrote off their debt.
 
 
 11
 Peoples Bank never notified Pommier about the sale of the property to Horizon Ventures, or that it had stopped receiving payments. It did not act on its assignment of rents after the payments ceased. Apparently Pommier attempted to collect rents on the property, but an agent of Horizon Ventures prevented him from doing so. Peoples Bank did nothing to prevent Pommier from collecting rents. Peoples Bank was not a party to the contract between Pommier and the Funks or between the Funks and Horizon Ventures.
 
 
 12
 Pommier filed suit against Peoples Bank, two bank officers, and the Funks. The suit against the Funks has been settled. Following the fifth amended complaint, the district court granted in part the defendants' motion to dismiss, and the remaining claims were disposed of on summary judgment. In the motion to dismiss, matters outside of the pleadings were presented to the court, as allowed under F.R.C.P. 12(b), converting it into a summary judgment motion. Although the district court did not make this explicit, this case has been treated by the district court and by the parties on appeal as if it had been decided on summary judgment, and that is therefore the standard under which we review the district court's decision.
 
 Standard of Review
 
 13
 "We review the district court's decision to grant summary judgment de novo and utilize the same standard of decision making as that employed by the district court." McMillian v. Svetanoff, 878 F.2d 186, 188 (7th Cir.1989). Rule 56(c) provides that:
 
 
 14
 The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.
 
 
 15
 The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The moving party, if a defendant, is under no obligation to show that a fact necessary to the plaintiff's case is not true, but only to show that the plaintiff has not presented sufficient evidence that the fact is true. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The plaintiff must then show that there is a genuine issue for trial, that is, that "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).
 
 Fiduciary Duty
 
 16
 The relationship between Peoples Bank and Pommier when he first took out the loans was that of a creditor and debtor, or a mortgagee and mortgagor. It is disputed whether they were even that closely connected after Peoples Bank was paid its 90% guarantee by the SBA. While Peoples Bank still hoped to get the remaining 10% of the loan paid, by serving as the SBA's collection agent, it is not clear that it had a right to collect directly from Pommier that was independent of the SBA's rights. The SBA had the right to collect from Pommier, and Peoples Bank received 10% of the payments in exchange for serving as the collection agent. Because the loan agreements between Peoples Bank and Pommier, and the guarantee agreements between Peoples Bank and the SBA are not a part of this record, it is impossible to state precisely what the legal relationship between Pommier and Peoples Bank was in 1983. It is safe to say, however, that at most their legal relationship was that of debtor and creditor.
 
 
 17
 There are certain relationships which give rise to a fiduciary duty as a matter of law, such as attorney-client. DeWitt County Public Building Commission v. DeWitt County, 128 Ill.App.3d 11, 83 Ill.Dec. 82, 93, 469 N.E.2d 689, 700 (1984) However, a debtor-creditor relationship is not a fiduciary relationship as a matter of law. Paskas v. Illini Federal Savings & Loan, 109 Ill.App.3d 24, 64 Ill.Dec. 642, 440 N.E.2d 194 (1982), Santa Claus Industries v. First National Bank, 216 Ill.App.3d 231, 159 Ill.Dec. 657, 661, 576 N.E.2d 326, 330 (1991). It is possible that the particular circumstances surrounding a relationship will make it a fiduciary relationship, even if the general class of debtor-creditor relationships is not. Santa Claus, 159 Ill.Dec. at 662, 576 N.E.2d at 331, Mid-America National Bank v. First Savings & Loan, 161 Ill.App.3d 531, 113 Ill.Dec. 367, 371, 515 N.E.2d 176, 180 (1987) In order for Pommier to establish the existence of a fiduciary relationship between him and Peoples Bank, he must plead and be able to prove, by clear and convincing evidence, specific facts which would support such a finding. Mid-America, 113 Ill.Dec. at 372, 515 N.E.2d at 181, Santa Claus, 159 Ill.Dec. at 662, 576 N.E.2d at 331, Farmer City State Bank v. Guingrich, 139 Ill.App.3d 416, 94 Ill.Dec. 1, 6, 487 N.E.2d 758, 763 (1985).
 
 
 18
 The essence of a fiduciary relationship is that one party is dominated by the other. Paskas, 64 Ill.Dec. at 647, 440 N.E.2d at 199. The fact that one party trusts the other is insufficient. We trust most people with whom we choose to do business. Paskas, 64 Ill.Dec. at 647, 440 N.E.2d at 199, DeWitt, 83 Ill.Dec. at 94, 469 N.E.2d at 701 (quoting Southern Trust Co. v. Lucas, 245 F. 286, 288 (8th Cir.1917)). The dominant party must accept the responsibility, accept the trust of the other party before a court can find a fiduciary relationship. DeWitt, 83 Ill.Dec. at 93, 469 N.E.2d at 700. "[A] slightly dominant business position ... [does] not operate to turn a formal contractual relationship into a confidential or fiduciary relationship." Mid-America, 113 Ill.Dec. at 372, 515 N.E.2d at 181. See also, Burdett v. Miller, 957 F.2d 1375, 1381 (7th Cir.1992) ("If a person solicits another to trust him in matters in which he represents himself to be expert as well as trustworthy and the other is not expert and accepts the offer and reposes complete trust in him, a fiduciary relation is established.") Pommier must show that he placed trust and confidence in Peoples Bank, and that Peoples Bank gained influence and superiority over him. We are to look at factors such as: kinship, age disparity, health, mental condition, education, business experience, and the extent of reliance. Santa Claus, 159 Ill.Dec. at 662, 576 N.E.2d at 331.
 
 
 19
 Pommier has relied on the following facts to support his claim of a fiduciary relationship: he trusts his bankers; the payment plan ran smoothly for many years; he moved to another state, making it somewhat harder for him to make sure the payments were being made; the parties had a history of working together, and the bank officers may have suggested the arrangement with the Funks. These facts, taken as true, are insufficient as a matter of law to establish a fiduciary relationship.
 
 
 20
 Examining the factors enumerated in Santa Claus, we can see that none of them support a finding that Pommier was dominated by the bank. There was no kinship between the parties, and no suggestion of any age disparity--Mr. Pommier was neither so young and naive as to be necessarily dominated by the bank, nor was he so very old that there could be even an inference that he was no longer in possession of his faculties. There has been no allegation of failing health, or any mental condition which would leave Mr. Pommier unable to conduct his own affairs. There was no evidence as to Mr. Pommier's level of education, but there was also no allegation on his part that he lacked in this respect. While the bank officers may have had more business experience than Mr. Pommier, he was not a novice in the business world. Mr. Pommier was the proprietor of his own construction company, and the founder of Aaron Pre-cut Homes. He clearly conducted his own business affairs. Mr. Pommier argues that for many years he relied on the bank and things ran smoothly. However, this had more to do with the prompt payments of the Funks than with anything that Peoples Bank did on his behalf. There was nothing to prevent Mr. Pommier from communicating with his creditors to make sure that they were receiving payments. He did not, in fact, receive statements from Peoples Bank informing him that payments had been made, so he had no reason to believe that the bank was keeping track of that for him. In short, Mr. Pommier has not pled, and the evidence has not shown, facts from which a fiduciary relationship could be inferred.
 
 
 21
 The cases relied upon by Mr. Pommier's counsel do not support a contrary view. Stewart v. Phoenix National Bank, 49 Ariz. 34, 64 P.2d 101 (1937), for instance, has been explicitly rejected by Illinois courts. Farmer City, 94 Ill.Dec. at 6, 487 N.E.2d at 763. Several other cases from other jurisdictions are relied upon, but as they are inconsistent with Illinois law which is applicable in this case, they do not assist the plaintiff's position. Finally, the cases relied upon by the plaintiff are distinguishable from the facts of this case, and since finding a fiduciary relationship depends upon the specific facts of the case, plaintiff's citations are unhelpful, particularly in light of more similar Illinois cases. For example, in Wallace Nursing Home, Inc. v. Mercantile Mortgage Co., 101 Ill.App.2d 154, 242 N.E.2d 281 (1968) (abstract), the court found no fiduciary relationship between a borrower and a bank "despite the customer's having done business with the bank for several years and relying on one of its officers." DeWitt, 83 Ill.Dec. at 93, 469 N.E.2d at 700. The facts in Santa Claus, supra, also bear a certain similarity to this case. After a series a financial transactions in which the defendant bank was involved, the plaintiff company was in debt to the bank. The plaintiff was, in turn, owed money by a third party. The defendant bank collected money from the third party and applied it to the payment of the plaintiff's debt, much as Peoples Bank collected money from the Funks to pay Pommier's debts. The court held that these facts did not support finding a fiduciary relationship between the plaintiff and the bank. Similarly, there is no basis for such a finding in this case. Since there was no fiduciary duty, there can be no breach.
 
 
 22
 Pommier's remaining arguments which he groups with his arguments about the fiduciary relationship are equally meritless. While Peoples Bank did posses the assignment of rents, it had no duty to exercise that assignment. Marcon v. First Federal Savings & Loan Association, 58 Ill.App.3d 811, 16 Ill.Dec. 253, 374 N.E.2d 1028 (1978). Pommier suggests that the bank chose not to do so because it was adequately protected without collecting rents. In fact, however, Peoples Bank lost money in this situation: Crest foreclosed on the mortgage, destroying the value of the collateral to Peoples Bank as well as to Pommier. Peoples Bank was only receiving money to pay off the remaining 10% of the debt when the Funks were making payments. When the Funks stopped making payments, Peoples Bank stopped getting paid, and when Crest foreclosed on the property, Peoples Bank lost their hope of ever receiving payment. Peoples Bank wrote off the debt.[4] (R.45 at 4, Curry deposition at 25).
 
 Implied Covenant of Good Faith
 
 23
 Pommier also argues that he is entitled to a trial on his claim that Peoples Bank breached an implied covenant of good faith. Under Illinois law all contracts include an implied covenant of good faith. Carrico v. Delp, 141 Ill.App.3d 684, 95 Ill.Dec. 880, 490 N.E.2d 972 (1986), First National Bank v. Sylvester, 196 Ill.App.3d 902, 144 Ill.Dec. 24, 554 N.E.2d 1063 (1990). However, before there can be an implied covenant, there first must be a contract between the parties that the covenant can be implied from. Pommier did not plead or show the existence of such a contract. He argues on appeal that "[s]urely there were initial loan agreements between Pommier and Peoples Bank." (reply brief at 3)[5] However, Pommier cannot oppose summary judgment with an allegation of "surely." In order to prevail at trial, Pommier would have to prove the continued existence of a contract between him and Peoples Bank. He put forth absolutely no evidence to support his allegation. Rule 56(e) states that:
 
 
 24
 [A]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.
 
 
 25
 Pommier has not supported his allegation, and, standing alone, it is insufficient.
 
 
 26
 The allegations of the complaint, and much of Pommier's argument on appeal refer to the Articles of Agreement between Pommier and the Funks. He suggests that it is this contract which Peoples Bank violated or did not follow in good faith. (see, e.g. brief at 23, reply at 8). The fundamental misconception of this argument is that Peoples Bank was somehow bound by that contract. It is clear on the face of the contract that Peoples Bank is not a party to that contract, and therefore, could not be bound by it. Chicago College of Osteopathic Medicine v. George A. Fuller, Co., 719 F.2d 1335, 1345 (7th Cir.1983).
 
 
 27
 Finally, although Pommier mentions "good faith," in p 13 of his complaint, it was as part of his allegation of breach of fiduciary duty, not as a separate cause of action. The opinions of the district court make no reference to any arguments made by Pommier based on breach of an implied covenant of good faith. Thus, it seems quite likely that Mr. Pommier has raised this issue for the first time on appeal, and it is therefore waived.
 
 Conclusion
 
 28
 It is clear from the undisputed facts that Mr. Pommier did not have a fiduciary relationship with the bank. It is not clear that he has had any relationship with the bank since 1974. Mr. Pommier has not pled, let alone shown evidence of, the facts necessary to support his causes of action. The defendant is entitled to judgment as a matter of law. Therefore, the district court's grant of summary judgment is affirmed.
 
 
 
 *
 The Honorable Hubert L. Will, Senior District Judge of the United States District Court for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Mr. Pommier is no longer a resident of Illinois; all of the defendants are
 
 
 [2]
 This has been assumed throughout the case by the parties and the district court. All of the relevant conduct took place in Illinois. Thus, we too will follow Illinois law in considering this appeal
 
 
 [3]
 Mr. Pommier stated in his deposition that it was his belief that the bank retained the collateral, however, his belief is not evidence. Mr. Curry, a bank officer, stated at one point that Peoples Bank had not released the collateral, but shortly thereafter corrected himself and said that the SBA had the collateral. Pommier argues that Peoples Bank cannot have transferred the collateral to the SBA because no such transfer was recorded in the records of land trust # 959, which counsel alleged was "contained in the record in its entirety." (reply brief at 3) Such a citation is inadequate, and we have searched the three-volume record without finding any such document. However, since Peoples Bank did have the collateral at one point, and there is no definitive evidence on when or how it was transferred, we will accept, for the purposes of deciding the appeal, that the collateral remained with Peoples Bank
 
 
 [4]
 This supports an additional reason why Pommier cannot prevail on his claim of breach of fiduciary duty. In order to prove a breach of fiduciary duty Pommier must prove that Peoples Bank benefited from the breach. Clearly, they lost. Fields v. Sax, 123 Ill.App.3d 460, 78 Ill.Dec. 864, 867, 462 N.E.2d 983, 986 (1984)
 
 
 [5]
 Mr. Pommier also argues that since he had a continuing obligation to repay the loan, that proves the continuing existence of a contract. However, Mr. Pommier's obligation once the SBA had paid Peoples Bank was to re-pay the SBA. The existence of a contract between Mr. Pommier and the SBA is not a disputed issue; nor is it relevant to resolving this case