57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES, Appellee,
v.
Jose A. BERNARDO-RODRIGUEZ, Defendant-Appellant.
 No. 94-2094
 United States Court of Appeals,
First Circuit.
 June 13, 1995
 
 Mar ia H. Sandoval, by Appointment of the Court, for appellant.
 Warren V azquez, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, and Jos e A. Quiles-Espinosa, Senior Litigation Counsel, were on brief for appellee.
 D.Puerto Rico
 AFFIRMED.
 Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and SELYA, Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant-appellant Jose A. Bernardo- Rodriguez appeals his conviction for possession with intent to distribute two kilograms of cocaine in violation of 21 U.S.C. Sec. 841(a)(1). Specifically, Bernardo-Rodriguez claims that his conviction rests on evidence found in an unlawful search, and the district court's denial of his motion to suppress this evidence was in error. For the following reasons, we affirm.
 
 BACKGROUND
 
 2
 We view the facts in the light most favorable to the ruling court's decision to the extent that they derive support from the record and are not clearly erroneous. United States v. Sealey, 30 F.3d 7, 8 (1st Cir. 1994). While working at the Luis Munoz Marin International Airport in Puerto Rico on May 23, 1993, Puerto Rico Police Officer Rafael Pacheco-Cruz ("Officer Pacheco") noticed the appellant acting nervously and avoiding contact or confrontation with airport or law enforcement officials. Bernardo- Rodriguez was walking awkwardly and sweating profusely, yet was wearing a jacket completely buttoned. Officer Pacheco observed a square-shaped object protruding from the right side of Bernardo- Rodriguez' abdominal area. Officer Pacheco followed Bernardo- Rodriguez to the control station at the gateway, where he observed Bernardo-Rodriguez nervously trying to adjust the front of his jacket.
 
 
 3
 At the control station, Bernardo-Rodriguez passed through the metal detector once uneventfully. At Officer Pacheco's request of airport security personnel, Bernardo-Rodriguez was directed to remove his jacket and walk through the metal detector a second time. While Bernardo-Rodriguez was removing his jacket, one of his shirt buttons became unbuttoned, allowing Officer Pacheco to more clearly see the square-shaped object protruding from the right side of his stomach. The officer then moved to Bernardo-Rodriguez' left and observed the same sort of square-shaped object there. At this point, Officer Pacheco approached Bernardo-Rodriguez and asked, "What do you have there?" Bernardo-Rodriguez replied, "What are you talking about?" The officer repeated his question, slightly touching Bernardo-Rodriguez' abdomen. Officer Pacheco then asked Bernardo-Rodriguez to follow him. Once out of public viewing, Officer Pacheco asked Bernardo-Rodriguez to lift his shirt. When Bernardo-Rodriguez complied with this request, two packages strapped to his abdomen under a lycra exercise belt became visible.[1] Officer Pacheco then arrested Bernardo-Rodriguez and seized the packages, in which cocaine was later found.
 
 ANALYSIS
 
 4
 As explained above, we review findings of fact on a motion to suppress only for clear error. Zapata, 18 F.3d at 975. Notwithstanding the deference given to factual determinations, however, we review questions of law de novo. Id.
 
 
 5
 In challenging the denial of his motion to suppress, Bernardo-Rodriguez' primary contention is that the seizure of the cocaine was the result of an illegal "pat-down" frisk search by Officer Pacheco. Specifically, he challenges the presiding court's finding that Officer Pacheco's detention of Bernardo-Rodriguez was a lawful Terry stop. See Terry v. Ohio, 392 U.S. 1, 23 (1968). Bernardo-Rodriguez contends that under Terry, Officer Pacheco could not lawfully touch him in the abdomen, because he had already gone through a metal detector and therefore could not have had a weapon. Officer Pacheco's slight touching of his abdomen, says Bernardo- Rodriguez, rendered the detention unlawful, and the contraband found as a result should have been suppressed.
 
 
 6
 It is elementary that under Terry, "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions. Terry, 392 U.S. at 30. The officer may also conduct a patdown search, or "frisk," where the officer is justified in believing that the person is armed and dangerous to the officer or others. Id. This protective search must be "limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby." Id. at 26.
 
 
 7
 In the instant case, however, the contraband was not found through the disputed touching, but only after Bernardo- Rodriguez had lifted his shirt and Officer Pacheco saw the packages. The narrow issue, therefore, is whether Officer Pacheco's slight touching of Bernardo-Rodriguez' abdomen was sufficiently coercive to convert the detention into an unlawful seizure, and thus render the subsequent consensual search invalid. We find that it was not.
 
 
 8
 If otherwise lawful Terry stops become sufficiently coercive, they become de facto or constructive arrests, and thus must be supported by probable cause rather than mere reasonable suspicion. Zapata, 18 F.3d at 975. In such cases, reviewing courts must determine whether under the circumstances " 'a reasonable man in the suspect's position would have understood his situation' ... to be tantamount to being under arrest." Id. (citing Berkemer v. McCarty, 468 U.S. 420, 442 (1984)). If so, then probable cause must support the officer's detention and use of force on the suspect. Id. If probable cause is not present, then the stop is an unreasonable seizure, and any subsequent consent given by the suspect to further searches is deemed involuntary. Id.
 
 
 9
 Although physical contact is relevant to the reasonableness of a suspect's perception that he is under arrest, not every physical contact between an officer and a suspect constitutes coercion. Zapata, 18 F.3d at 977. We have recently recognized that an officer need not have probable cause for certain de minimis uses of force incident to legitimate investigatory stops. Id. In Zapata, we rejected the appellant's argument that a slight touching by the officer during an investigatory stop rendered the seizure invalid, holding that a "modest laying-on of hands" by an officer on a suspect during a otherwise lawful investigatory stop did not convert the detention into an unlawful arrest unsupported by probable cause. Id. at 976-77.
 
 
 10
 Officer Pacheco's initial detention of Bernardo-Rodriguez was certainly supported by reasonable suspicion, particularly given the square objects visibly protruding from Bernardo-Rodriguez' abdomen, and his unusual, nervous behavior. Moreover, we believe that Officer Pacheco's slight, unintrusive touching-hardly more than a gentle poke-of Bernardo-Rodriguez' abdomen during the lawful detention was de minimis. It is much less intrusive than a pat-down or handcuffing, both of which have been upheld as lawful uses of physical force incident to a Terry stop. See Zapata, 18 F.3d at 977 (citing United States v. Willis, 967 F.2d 1120, 1223 (8th Cir. 1992) and Tom v. Voida, 963 F.2d 952, 958 (7th Cir. 1992)). The touching is simply insufficient to convert the stop into a constructive arrest unsupported by probable cause. We conclude that Bernardo-Rodriguez was not unlawfully seized and therefore find that his motion to suppress was properly denied.
 
 
 11
 For these reasons, we affirm his conviction. @
 
 
 
 [1]
 Bernardo-Rodriguez testified that he never voluntarily lifted his shirt, but that Officer Pacheco lifted it without Bernardo- Rodriguez' consent. He now contends that the magistrate judge erred in disregarding his version of events and crediting that of Officer Pacheco. Credibility determinations, however, are the province of the presiding court in a suppression hearing, and we review them only for clear error. United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994). This deferential standard stems from the presiding court's opportunity to hear the testimony, observe the witnesses' demeanor, and evaluate the facts first-hand. Id. Because we find no indication in the record that the magistrate judge's credibility determinations were clearly erroneous, we uphold his factual findings