Ralph O. PUCCI, et al., Plaintiffs,

v.

Gerald H. LITWIN, et al., Defendants.

No. 88 C 10923.

United States District Court, N.D. Illinois, E.D.

July 20, 1993.

Roseanne J. Faraci, Stanley J. Parzen, John M. Touhy, Mayer, Brown & Platt, Chicago, IL, for plaintiffs.

Randall S. Rapp, Foley & Lardner, Chicago, IL, Ronald M. Wawrzyn, Foley & Lardner, Milwaukee, WI, for Gerald H. Litwin, Berg/Harquel Assoc., Berg/Harmon, Clapp & Eisenberg.

Howard J. Swibel, Michael R. Turoff, Arnstein & Lehr, Chicago, IL, Chester H. Foster, Jr., Homewood, IL, for Harmon Envicon Assoc., Harquel Assoc. II, Robert T. Harmon and Pennsylvania Realty Consultants.

Paul Joseph Komyatte, Greenberger, Krauss & Tenenbaum, Chtd., Susan Getzendanner, Hilary K. Krane, Skadden, Arps, Slate, Meagher & Flom, Howard J. Swibel, Michael R. Turoff, Arnstein & Lehr, Charles Louis Glick, Hedlund and Hanley, Chicago, IL, Chester H. Foster, Jr., Homewood, IL, for Inc. Berg Enterprises.

## MEMORANDUM OPINION AND ORDER

ALESIA, District Judge.

Before the court is the motion to dismiss plaintiffs' Second Amended Complaint filed by defendants Litwin and Clapp & Eisenberg (the "Litwin defendants"). The court previously dismissed Counts I and II of the Second Amended Complaint *sua sponte* in its order dated April 23, 1993. The court dismissed nearly identical counts in the First Amended Complaint in a Memorandum Opinion and Order dated February 18, 1993. That opinion was vacated when plaintiffs sought, and the court granted, leave to amend their complaint to introduce new allegations regarding fraudulent coal mining investment schemes. Accordingly, the court will reiterate its reasons for dismissing Counts I and II here.[1] In addition, the court will address the merits of defendants' instant motion to dismiss the remaining counts of the Second Amended Complaint.[2]

## I. FACTS

This action arises out of plaintiffs' investment in a real estate tax shelter. Plaintiffs purchased limited partnerships in Wilkes Barre Associates ("WBA"), which were purportedly investment opportunities designed to generate significant tax deductions for plaintiffs. Subsequently, however, the entire transaction became the subject of an Internal Revenue Service audit, which apparently resulted in the disallowance of many of plaintiffs' deductions. Plaintiffs initially filed this action December 29, 1988, claiming they were defrauded as a result of allegedly material misrepresentations and omissions defendants made in connection with the offer of WBA limited partnerships in September, 1981. Subsequently, plaintiffs amended their complaint to add allegations about other fraudulent schemes to defraud investors in connection with multiple sales of partnership and other interests related to coal mining.

The Second Amended Complaint consists of eight counts. In Count I, plaintiffs allege that defendants violated Section 10(b) of the

---

1. It should be noted that the plaintiffs dismissed with prejudice their claims against Berg Enterprises, Inc. on June 22, 1993.

2. The Court will briefly dispose of several of plaintiffs' preliminary arguments out of hand. First, defendants have not waived any arguments on this motion to dismiss by failing to raise them in their previous motion to dismiss. This is a new complaint and a new ball game. Second,

defendants' motion is not in violation of this Court's order to "answer or otherwise plead" on or before May 7, 1993. Third, the court did not previously hold that plaintiffs' RICO claim in Count VIII was adequately pled; rather the court granted leave to amend plaintiffs' First Amended Complaint because amendment would not be futile.

Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5 (1990). In Count II, plaintiffs claim that defendants' conduct in connection with the sales of limited partnership interests in Wilkes Barre entitles them to redress under the provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68. Count VIII alleges a RICO violation based on the Wilkes Barre limited partnership and various coal mining transactions. The remaining counts allege state law claims over which the court has supplemental jurisdiction. Plaintiffs allege breach of fiduciary duty (Count III); fraud, fraudulent inducement and fraudulent misrepresentation (Count IV); negligent misrepresentation and malpractice (Count V); consumer fraud and deceptive business practices (Count VI); and constructive trust (Count VII).

## II. DISCUSSION

### A. Counts I and II of the Second Amended Complaint

The court dismissed Counts I and II of the Second Amended Complaint *sua sponte* because those counts were nearly identical to Counts I and III of the First Amended Complaint, respectively, which the court had previously dismissed in its Memorandum Opinion and Order dated February 18, 1993. Since the court vacated that opinion, in which the court adopted Magistrate Judge Bobrick's Report and Recommendation, the court will reiterate its reasoning below.

#### 1. Count I: Section 10(b) and Rule 10b–5 Claim

The Litwin defendants argued that Count I of the First Amended Complaint (also Count I of the Second Amended Complaint), alleging violations of Section 10(b) and Rule 10b–5, was time-barred according to the statute of limitations announced in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* 501 U.S. ——, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Plaintiffs contended that *Lampf,* which the Supreme Court decided well after plaintiffs filed their complaint, could not be

applied retroactively. Although plaintiffs subscribed to their limited partnership interests in Wilkes Barre in 1981, they filed their original complaint in 1988. *See* Second Amended Complaint, ¶¶ 19–20. The plaintiffs alleged that they first learned of the fraudulent nature of the transaction in 1988, when the IRS challenged many of the plaintiffs' tax deductions. *Id.* at ¶ 31. Since the law in this area has been in a state of flux, the court reviewed the Magistrate Judge's Report and Recommendation and plaintiffs' objections in light of recent changes to determine the appropriate statute of limitations.

In *Lampf,* the Supreme Court held that litigation instituted pursuant to Section 10(b) and Rule 10b–5 must be commenced within one year after discovery of the facts constituting the violation. 501 U.S. at ——, 111 S.Ct. at 2782. The court selected the language of Section 9(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(e) as the governing standard. *See Lampf,* 501 U.S. at ——, 111 S.Ct. at 2782 n. 9. In *Lampf,* however, the Court did not explicitly address whether the holding should be applied retroactively but did apply the newly announced limitations period to the parties in that case. *Id.* at ——, 111 S.Ct. at 2782. Furthermore, in *James B. Beam Distilling Co. v. Georgia,* —— U.S. ——, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991), decided the same day as *Lampf,* the Supreme Court decided that if a new rule has been applied to the parties before a federal court, that rule must apply to all cases then pending on direct review. *Id.* at ——, 111 S.Ct. at 2448. *See also Harper v. Virginia Department of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, ——, 125 L.Ed.2d 74 (1993). Thus, it would appear that *Lampf* should apply retroactively to the parties in the instant case.

Congress, however, has limited the retroactivity of the Supreme Court's decision in *Lampf* by enacting a provision to amend the 1934 Act to do away with the combined effect of *Lampf* and *James Beam* with respect to cases commenced before June 19, 1991, the day before *Lampf* and *James Beam* were decided.[3] The new Section 27A provides:

---

**3.** Congress enacted this provision among the miscellaneous provisions of the FDIC Improve-

The limitation period for any private civil action implied under Section 10(b) of this Act that was commenced on or before June 19, 1991, shall be the limitation period provided by the laws applicable in the jurisdiction, including principles of retroactivity, as such laws existed on June 19, 1991.

15 U.S.C. § 78aa–1(a). Thus, the limitation period provided by Illinois law on June 19, 1991 controls. According to *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1458 (7th Cir.1992), the applicable Illinois law on June 19, 1991 is stated in *Short v. Belleville Shoe Manufacturing Co.*, 908 F.2d 1385, 1389 (7th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1052 (1991).

In *Short,* the Seventh Circuit rejected the practice of borrowing the limitations period for Section 10(b) claims from state law and established a federal limitations period based on Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m (1988). *Short,* 908 F.2d at 1392. According to the statute of limitations announced in *Short,* plaintiffs have one year from the date they discover or should have discovered a fraud to bring suit, but in no event may plaintiffs bring suit after three years from the sale of the securities. *Id.* at 1391. Since the instant case was filed prior to the decision in *Short,* however, the court had to decide whether *Short* applies retroactively to the parties in the instant case. Although the Seventh Circuit applied the new federal statute of limitations to the parties before it in *Short,* the court left "for the future all questions concerning retroactive application of this decision." *Id.* at 1389.

*James Beam* would have provided a simple answer to the question of retroactive application of *Short* to the parties, but Congress pursuant to Section 27A instructed the court to use "principles of retroactivity" as they stood on June 19, 1991, the day before the court decided *James B. Beam. See McCool,* 972 F.2d at 1458. Therefore, the court applied the analysis set forth in *Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30

L.Ed.2d 296 (1971), the controlling precedent on that date. *Chevron* required a case-by-case balancing of three factors to decide whether a new rule will be applied retroactively:

[1] [T]he decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.

.    .    .    .    .

[2] [The court must] "weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation."

[3] [The court must weigh] the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the 'injustice or hardship' by a holding of nonretroactivity."

*Id.* at 106–107, 92 S.Ct. at 355 (citations omitted). Thus, the court applied the three part test set forth in *Chevron* to determine whether the limitations period in *Short* should apply retroactively to the parties in this case.

First, the court considered whether the new limitations period announced in *Short* plainly overruled clear precedent. *Short* broke from a long-established precedent of borrowing the statute of limitations from the Illinois Blue Sky Law. 815 ILCS 5/13(D) (1993) (previously cited as ILL.REV.STAT. ch. 121½, ¶ 137.13(D)). *See Cortes v. Gratkowski,* 795 F.Supp. 248, 251–52 (N.D.Ill.1992). As the Seventh Circuit explained in *Short,*

[f]or many years we have applied to cases under Rule 10b–5 statutes of limitations borrowed from state blue sky statutes,

---

ment Act on December 19, 1991 after Magistrate Judge Bobrick had filed the Report and Recommendation ("R & R"). Although the R & R addressed the contingency that Congress might pass legislation on this issue, the amendment passed differs from the proposed amendment

considered by Magistrate Judge Bobrick. The court considered supplemental memoranda filed by the parties on this issue in addition to plaintiffs' objections to the Magistrate Judge's R & R and defendants' responses to plaintiffs' objections.

adding an overlay of tolling principles from state and federal law ... Federal courts are so accustomed to turning to state periods of limitations that we (and our colleagues in other circuits) did this on autopilot, without discussing whether something differentiated securities laws from other statutes.

*Short,* 908 F.2d at 1387 (citations omitted). In *Cortes,* which was filed approximately two months prior to the decision in *Short,* the defendants argued that *Short* had been foreshadowed by Supreme Court and Seventh Circuit cases. *Cortes,* 795 F.Supp. at 252. The court rejected that argument, however, reasoning that the refusal of courts to change the law in cases immediately preceding *Short* did not foreshadow a change but rather strengthened the clear past precedent of applying the statute of limitations from the Illinois Blue Sky Law to Section 10(b) cases. *Id.* Because the plaintiffs filed the instant case two years before *Short,* the plaintiffs here, like the plaintiffs in *Cortes,* could not be expected to have foreseen the change in the limitations period. Therefore, the court found that the first *Chevron* factor militates against retroactive application of *Short.*

Second, the court considered whether the purpose and effect of the new rule would be furthered or retarded by retroactive application. Statutes of limitations serve two basic interests: "the remedial interest served by the cause of action, and the interest of uniformity and certainty...." *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1240 (N.D.Ill.1990). "Where a judicial decision shortens the statute of limitations, retroactive application tends to further the second interest but hinder the first interest." *Id.* Placement of undue emphasis on the uniformity interest, however, would "swallow the rule" because new statutes of limitations would always be applied retroactively. *Id.* In the instant case, the court concluded that "retroactive application would further the purposes of the new limitations rule by removing the 'daunting' tasks of determining which state statute applies and whether federal or state tolling rules govern." *See, e.g., In re VMS Securities Litigation,* 752 F.Supp. 1373, 1388 (N.D.Ill.1990). *See also Short,* 908 F.2d at 1388–89 (stating that the

endeavor to find a uniform period of limitations has proved "daunting" in securities cases and lamenting the "untold hours" devoted by lawyers and courts to identifying proper state analogues and applying multiple tolling doctrines). *But see Cortes v. Gratkowski,* 795 F.Supp. 248, 252–53 (N.D.Ill. 1992) (finding that the interests of uniformity would not be significantly affected by the prospective application of *Short* since only the few actions filed prior to *Short* would be subject to a different limitations period), *summary judgment denied,* 795 F.Supp. 248 (N.D.Ill.1992). Thus, the lack of clarity of disparate statutes of limitations supports the retroactive application of the uniform federal statute of limitations announced in *Short.*

Third, the court considered whether retroactive application would result in substantial inequity. The Seventh Circuit applied the new limitations rule to the litigants in *Short,* noting that the plaintiff could not have relied on the previous law because "she claims to have been unaware of the basis for litigation until a short time before filing suit." *Short,* 908 F.2d at 1390. Other cases have applied a new limitations period retroactively for the same reason. *See, e.g., In re VMS Securities Litigation,* 752 F.Supp. 1373, 1388 (N.D.Ill. 1990) (suit filed just over one month after plaintiffs became aware of their claims); *Flaherty v. Greenblatt,* 1990 WL 172698, 1990 U.S.Dist. LEXIS 14547 (N.D.Ill.1990) (plaintiff filed suit two months after discovering their cause of action). Similarly, since the plaintiffs here allege that they filed their claim shortly after discovering the alleged violations, the plaintiffs could not have relied on the previous limitations period applicable to Section 10(b) cases. *See* Second Amended Complaint, at ¶ 31. Therefore, the third *Chevron* factor supports retroactive application of *Short* in the instant case.

On balance, the court finds that *Short,* the law applicable in Illinois on June 19, 1991, should apply since *Chevron,* which states the principles of retroactivity applicable on that date, warrants retroactive application of *Short* in this case. *Short* established an outside limit of three years from the date of allegedly fraudulent sale of secu-

rities to file suit claiming violations of Section 10(b) and Rule 10b–5. 908 F.2d at 1391. Thus, plaintiffs' claims in Count I were not timely filed because plaintiffs filed their complaint in 1988, approximately seven years after the alleged fraudulent sale of securities.

In fact, defendants argue that even had there been no *Lampf* or *Short* decision, plaintiffs' claims, coming seven years after the purchase of securities, would have been subject to dismissal as untimely filed. The Illinois Blue Sky Law provides that "[n]o action shall be brought for relief under this Section ... after three years from the date of sale" and allows a maximum two year tolling of the three year limitations period. 815 ILCS 5/13(D) (1993) (previously cited as ILL.ANN. STAT. ch. 121½, ¶ 137.13(D) (Supp.1991)). The two year tolling period "was designed particularly to cover cases of fraudulent concealment or so-called 'lulling' activities by promoters." *Cortes v. Gratkowski,* 1991 WL 632, *5, 1990 U.S. Dist LEXIS 17712, *14 (N.D.Ill. December 21, 1990), *summary judgment denied,* 795 F.Supp. 248 (N.D.Ill.1992). In *Cortes,* the court stated that

> [t]he tolling provision provides that the three-year period begins to run on the earlier of the date the plaintiff has actual knowledge or the date the plaintiff in the exercise of reasonable diligence should have had actual knowledge of the alleged violations.... [The complaint must be] filed within three years of the discovery of the fraudulent activity and within five years of the alleged purchase of partnership interests.

*Id.* Thus, even the previous statute of limitations set an outside limit of five years from the date the securities were purchased for plaintiffs to pursue Section 10(b) and Rule 10b–5 claims.

Although plaintiffs allege that they did not discover defendants' alleged fraud until December 1988, the plaintiffs subscribed for their partnership units, made initial payments, and were admitted to the partnership in 1981. Plaintiffs filed their original complaint in December 1988, seven years after they first purchased their interests in the Wilkes Barre Associates. Thus, no matter which statute of limitations applies, the plaintiffs' claims were not timely filed. Therefore, the court dismissed Count I with prejudice.

### 2. *Count II: RICO Claim*

The Litwin defendants argued that Count III of the First Amended Complaint (now Count II of the Second Amended Complaint) should be dismissed for failure to state a claim upon which relief could be granted. The court dismissed Count II of the Second Amended Complaint *sua sponte* for the following reasons.

RICO imposes criminal and civil liability on individuals who engage in certain prohibited activities constituting a "pattern of racketeering activity." 18 U.S.C. § 1962. The statute defines "racketeering activity" to include any "predicate act" indictable under various federal statutes. 18 U.S.C. § 1961(1). Under the statute, the "pattern" element "requires at least two acts of racketeering activity" within a ten year period, 18 U.S.C. § 1961(5), but courts have construed this definition as a bare minimum requirement. *See, e.g., H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). Therefore, "while two acts are necessary, they may not be sufficient." *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. "Section 1961(5) concerns only the minimum number of predicates necessary to establish a pattern; and it assumes that there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J. Inc.,* 492 U.S. at 238, 109 S.Ct. at 2899–2900.

The Supreme Court assigned to the lower courts the task of fashioning a meaningful concept of "pattern" within a framework that required the predicate acts of a pattern to exhibit both "continuity" and "relationship." *Sedima,* 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. The court defined "continuity" as a "closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc.,* 492 U.S. at 241, 109 S.Ct. at 2902. The court found that "relationship" could be established by "criminal acts that have the

same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. at 2901. Thus, whether a RICO "pattern" exists is a fact-specific inquiry encompassing many relevant factors. *Jones v. Lampe,* 845 F.2d 755, 757 (7th Cir. 1988).

When deciding a motion to dismiss, the court must accept all of plaintiffs' well pleaded facts as true and view allegations in a light most favorable to the plaintiffs. *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Plaintiffs allege a scheme involving the defendants' fraudulent handling of plaintiffs' investment in a real estate tax shelter. Specifically, plaintiffs allege first that the defendants restructured the already completed purchase of an apartment complex by effectively doubling the interest rate without a legitimate purpose. *See* Second Amended Complaint, at ¶ 17. Second, plaintiffs allege that the defendants entered into a fraudulent agreement to divide the profits to be realized from the interest rate spread. *Id.* at ¶ 18. Third, plaintiffs allege that the defendants used misleading offering documents and oral misrepresentations to solicit certain plaintiffs to buy the limited partnership units. *Id.* at ¶ 19. Fourth, several months later, the defendants solicited different plaintiffs using different offering documents. *Id.* at ¶ 20. Finally, plaintiffs allege that three additional fraudulent transactions served to conceal the original scheme: (1) the assignment of a portion of one defendant's expected profits from the interest rate spread in trust for the plaintiffs, (2) the false promise of a similar assignment of a portion of another defendant's profits, and (3) one defendant's false assurance to one plaintiff that the interest rate on the restructured real estate deal would be renegotiated. *See id.* at ¶ 59.

Unfortunately, there exists no formulaic standard to determine whether plaintiffs have sufficiently alleged a RICO claim. *See, e.g., United States Textiles, Inc. v. Anheuser–Busch Cos.,* 911 F.2d 1261, 1266 (7th Cir.1990) ("a concrete definition for precisely what activity will constitute a 'pattern' for purposes of the RICO statute has eluded the federal courts"). Rather, the Seventh Circuit has endorsed a case-by-case analysis focusing on the number and variety of predicate acts, the length of time over which they were committed, the number of victims, the presence of separate schemes, and the occurrence of distinct injuries. *Morgan v. Bank of Waukegan,* 804 F.2d 970, 975 (7th Cir. 1986). Since the court had to conduct *de novo* review of Magistrate Judge Bobrick's Report and Recommendation in light of plaintiffs' objections to the R & R and defendants' responses to the plaintiffs' objections, the court evaluated the plaintiffs' allegations considering the factors set forth in *Morgan.*

### a. *Number and Variety of Predicate Acts*

The first factor is the number and variety of alleged predicate acts. The Magistrate Judge found that although plaintiffs alleged numerous predicate acts, they were essentially part of one alleged scheme involving a one-time fraudulent investment opportunity and exhibited little variety. *See, e.g., J.D. Marshall International, Inc. v. Redstart, Inc.,* 935 F.2d 815, 820 (7th Cir.1991). The court agreed that the numerosity of predicate acts could be traced to the complexity of the alleged scheme: the syndication of a real estate limited partnership. Therefore, the court found that plaintiffs cannot rely on that complexity to generate numerous predicate acts. *Morgan,* 804 F.2d at 975.

Plaintiffs objected to the Magistrate Judge's finding, arguing that they had demonstrated a sufficient "number and variety of predicate acts to meet the first *Morgan* factor." Plaintiffs' Objections to R & R, at 6. First, plaintiffs argued that they had alleged numerous transactions including the syndication, the property acquisition, a side agreement to divide profits, and later fraudulent promises. Second, plaintiffs argued that they had alleged a variety of predicate acts, including securities fraud and several acts of mail and wire fraud. *Id.*

Plaintiffs argued that courts have found the pattern requirement satisfied in cases "where the fact patterns track that of this case." Plaintiffs' Objections to R & R, at 8.

They cited *Deppe v. Tripp*, 863 F.2d 1356 (7th Cir.1988), where the court held that a single scheme defrauding four victims on two occasions constituted a pattern. *Id.* at 1367. *Deppe* is distinguishable from the instant case, however. In *Deppe*, several acts of racketeering occurred, since the defendants (1) fraudulently induced one plaintiff to loan them money which they never repaid, (2) fraudulently induced plaintiffs to buy worthless stock, and (3) offered to exchange for plaintiffs' shares (plus cash) worthless stock in a dissolved corporation. *Id.* Thus, plaintiffs were defrauded on more than one occasion. *See id.* Unlike the plaintiffs in *Deppe*, plaintiffs here allege a single fraud whereby they were induced to enter into the Wilkes Barre Associates as limited partners, albeit not all plaintiffs subscribed simultaneously. All of the subsequent transactions plaintiffs allege consist of defendants' efforts to conceal the original fraud.

The Seventh Circuit has held that "multiple acts of mail fraud in furtherance of a single episode of fraud involving one victim and relating to one basic transaction cannot constitute the necessary pattern." *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988) (citing *Tellis v. U.S. Fidelity & Guar. Co.*, 826 F.2d 477, 478 (7th Cir.1986)). In *Lampe*, the court recognized that "skilled attorneys may artfully plead their civil RICO case [but] the district court [must] carefully scrutinize the allegations contained in the complaint to determine whether they state a claim." 845 F.2d at 757. Although the court must accept all plaintiffs' allegations as true, "it need not close its eyes to the content of these allegations." *Id.* "Plaintiffs' attempt to plead around the single transaction problem by characterizing these activities as 'subschemes' does not fulfill the continuity requirement needed to show a pattern." *Id.* at 758. As in *Lampe*, when the court looked beyond the artfully pleaded allegations in the instant case, the facts revealed only a single scheme.

Plaintiffs argued that at least three courts of appeals have held that fraud in the sale of interests in à single limited partnership constitutes a pattern. *See Fleischhauer v. Feltner*, 879 F.2d 1290, 1297–98 (6th Cir.1989) (using *Morgan* factors, court found pattern in sale of units in single limited partnership to 19 investors over 4–6 month period via a single set of offering documents), *cert. denied*, 493 U.S. 1074, 110 S.Ct. 1122, 107 L.Ed.2d 1029 (1990); *Barticheck v. Fidelity Union Bank/First National State*, 832 F.2d 36, 38–39 (3d Cir.1987) (sale of more than 20 units in a single limited partnership as part of a single scheme constituted a pattern); *Weft, Inc. v. G.C. Invest. Associates*, 630 F.Supp. 1138, 1142 (E.D.N.C.1986) (sale of interests in single partnership by oral and written misrepresentations to at least 3 investors constituted a pattern), *aff'd mem.*, 822 F.2d 56 (4th Cir.1987). Plaintiffs' Objections to R & R, at 3.

However, the cases plaintiffs cited were decided before the Supreme Court's most recent pronouncements in *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). The Third Circuit has stated that although *H.J.* is consistent with the rejection of a multiple-scheme requirement in *Barticheck*, "*H.J. Inc.* includes some additional teachings that arguably require adjustment in our prior approach to the concept of 'continuity'". *Marshall–Silver Constr. Co. v. Mendel*, 894 F.2d 593, 596 (3d Cir.1990). Similarly, the Sixth Circuit held in a post-*H.J.* decision that defendants who fraudulently induced purchases of limited partnership interests in barges to two different groups of plaintiffs on two different occasions within one month did not commit a pattern of racketeering activity, despite a long term relationship resulting from the purchases because there was no assertion that the parties contemplated any further purchases. *McCoy v. Hilliard*, 940 F.2d 660 (table), 1991 WL 132522, 1991 U.S.App. LEXIS 17760, *16 (6th Cir. July 19, 1991). Finally, a more recent Fourth Circuit case, *Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir.1989), applying *H.J.*, found that no pattern existed where a single fraud was allegedly perpetrated against "one set of victims." *Id.* at 684.

■ Several post-*H.J.* cases decided by district courts within the Seventh Circuit also show that claims based on one-time fraudulent undertakings do not amount to a pat-

tern. *See, e.g., Sullivan v. Group W. Cable Assoc. Inc.,* 1991 WL 164488, *3 1991 U.S. Dist. LEXIS 11571, *16 (N.D.Ill. August 16, 1991) (no pattern where 172 limited partners were injured by two allegedly fraudulent offerings that were part of single scheme); *QO Acquisition Corp. v. Julien Co.,* 1990 WL 16459, *3 1990 U.S.Dist. LEXIS 1467, *8–9 (N.D.Ill. February 8, 1990) (no pattern where multiple acts of securities fraud, mail and wire fraud relate to a "single incidence of 'racketeering activity'" even though defendants allegedly made several misrepresentations); *Dalton v. Alston & Bird,* 741 F.Supp. 1322, 1333 (S.D.Ill.1990) (no pattern based on fraudulent bond offering to multiple plaintiffs over the course of a few months; multiplicity of predicate acts due to complexity of a single endeavor cannot support a pattern); *Langley v. American Bank of Wisconsin,* 738 F.Supp. 1232, 1236–37 (E.D.Wis.1990) (where multiple acts of fraud were related to two intertwined transactions due to complexity, court found no "reasonable inference of regular criminal activity" and thus no pattern).

■ Thus, where multiple predicate acts exist only because the transaction is a complicated one requiring many separate statements, the first *Morgan* factor, the number and variety of predicate acts, is not satisfied.

### b. *Number of Victims*

The second factor is the number of victims. There exist numerous victims in this case, including at least 30 investors in the real estate limited partnership. Thus, this factor supports the finding of a pattern.

■ As the Magistrate Judge pointed out, however, the number of victims is not dispositive. *See, e.g., Olive Can Co. v. Martin,* 906 F.2d 1147, 1151 (7th Cir.1990). The existence of multiple plaintiffs cannot transform a single fraud into a RICO pattern. *See Hughes v. Consol–Pennsylvania Coal Co.,* 945 F.2d 594, 611 (3d Cir.1991) (treating a group of several alleged victims who suffered identical injuries in identical manner as a single victim for purposes of determining that no pattern existed), *cert. denied,* —— U.S. ——, 112 S.Ct. 2300, 119 L.Ed.2d 224 (1992). Thus, the court agreed that the number of victims must be considered along with other factors to determine whether a pattern exists.

### c. *Separate Schemes*

The third factor is whether separate schemes were present or whether several transactions constituted only a single scheme. Defendants argued subsequent acts of concealment, purportedly designed to string plaintiffs along, do not constitute separate schemes, but merely parts of a single scheme. *Jones v. Lampe,* 845 F.2d 755, 758 (7th Cir.1988); *Frank E. Basil, Inc. v. Leidesdorf,* 713 F.Supp. 1194, 1201 n. 6 (N.D.Ill.1989). What plaintiffs allege is simply a single fraud which involved several transactions but does not amount to a pattern of racketeering activity. Where a single scheme has been found sufficient, there have been repeated economic injuries to plaintiffs. *Lampe,* 845 F.2d at 759. Plaintiffs here allege neither separate schemes nor multiple economic injuries.

■ Plaintiffs argued that a single scheme consisting of several transactions can satisfy the pattern requirement. They stated that "[a] transaction is an event; a scheme is a plan." Consolidated Memorandum in Opposition to Defendants' Motions to Dismiss and for Partial Summary Judgment ("Plaintiffs' Consolidated Memo"), at 14. Plaintiffs cited *Morgan* for the proposition that:

> [T]he predicate acts must be ongoing over an identified period of time so that they can fairly be viewed as constituting separate *transactions* .... However, the mere fact that the predicate acts relate to the same overall *scheme* or involve the same victim does not mean that the acts automatically fail to satisfy the pattern requirement.

804 F.2d at 975–76 (emphasis added). Thus, plaintiffs argued that *H.J. Inc.* expressly disavowed the multiple scheme requirement. *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 236, 109 S.Ct. 2893, 2898, 106 L.Ed.2d 195 (1989).

Magistrate Judge Bobrick acknowledged and the court agreed that a single scheme could constitute a pattern of racketeering

activity where there are "repeated, economic injuries to plaintiffs." R & R, at 13 (citing *Lampe*, 845 F.2d at 759). He also noted that although the presence of separate schemes is not dispositive, it nonetheless remains an important factor in determining whether a pattern exists. *Id. See also United States Textiles, Inc. v. Anheuser–Busch Cos., Inc.,* 911 F.2d 1261, 1269 (7th Cir.1990) (quoting *Sutherland v. O'Malley*, 882 F.2d 1196, 1204, (7th Cir.1989)) ("it is not irrelevant in analyzing the continuity requirement, that there is only one scheme"). Since the court agreed with Magistrate Judge Bobrick's conclusion that plaintiffs did not suffer repeated economic injuries, *see infra*, the third *Morgan* factor, the existence of separate schemes, marshals against finding a pattern.

### d. *Distinct Injuries*

The fourth factor is whether the predicate acts resulted in the occurrence of distinct injuries. Plaintiffs argued that the investors experienced several different injuries, including: (1) the loss of each investor's investment, (2) the lost profits which each investor would have realized but for the defendants' frauds, and (3) the interest (and perhaps penalties) arising out of the tax deductions plaintiffs were promised but did not receive. *Id. .* Plaintiffs contended that each of these injuries is distinct in nature and time, each stemming from a different transaction. *Id.* They argued, for example, that the purchase price and tax consequences are distinct in nature because the interest and penalties, unlike the purchase payments, are statutory and constitute a different form of economic injury. Plaintiffs' Consolidated Memo, at 19. Further, plaintiffs argued the injuries are distinct in time because the IRS disallowance and demands for interest and penalties came years after the corresponding purchase payments. *Id.* They also argued that the injuries stem from different transactions since the restructuring of the real estate acquisition led to the tax consequences and the syndication led directly to the purchase price loss. *Id.* at 19–20. Finally, they argued that each repeated mailing of Schedule K–1 forms over the course of approximately seven years constituted a distinct transaction and caused a distinct injury. *See* Plaintiffs' Consolidated Memo, at 20.

The court did not embrace plaintiffs' attempt to separate various components of what essentially constitutes a single injury. Each victim was a target of the same allegedly fraudulent real estate investment scheme, and each suffered the identical harm. Plaintiffs, citing *Morgan*, argued that each mailing of a fraudulent tax return over an extended period of time is a distinct transaction, each "a separate lie" and each resulting in "a separate underpayment, independent of the other lies and underpayments." *See* Plaintiffs' Consolidated Memo, at 20. However, *Morgan* cites for this proposition *Illinois Department of Revenue v. Phillips*, 771 F.2d 312 (7th Cir.1985) where the defendant mailed nine separate fraudulent state sales tax returns to the state over a nine month period. *See Morgan*, 804 F.2d at 976 (citing *Phillips* ). *Phillips* is distinguishable from the instant case because in that case each filing of a fraudulent tax return enabled the defendant to profit by underpayment of taxes on a continuing basis. Mailing allegedly fraudulent K–1 forms in this case, on the other hand, served merely to conceal the underlying scheme.

■ As Magistrate Judge Bobrick stated, defendants' alleged subsequent acts of concealment, purportedly designed to string plaintiffs along, do not constitute separate schemes, but merely parts of the single scheme. R & R, at 13 (citing *Lampe*, 845 F.2d at 758). Where a plaintiff alleges distinct injuries to a number of victims as the result of a single scheme and a limited variety of predicate acts, no pattern of racketeering activity is shown. *Olive Can*, 906 F.2d at 1151. *See also United States Textiles, Inc. v. Anheuser–Busch Cos.*, 911 F.2d 1261, 1269 (7th Cir.1990) (identical economic injuries stemming from a single contract did not demonstrate a pattern). Thus, the fourth factor, the occurrence of distinct injuries, does not support a finding that a pattern exists.

■ In light of the factors set forth in *Morgan*, the court held that plaintiffs had not sufficiently alleged a pattern of criminal activity to support their RICO claim. Thus,

the court adopted Magistrate Judge Bobrick's recommendation as to the dismissal of Count III of the First Amended Complaint. Accordingly, the court dismissed *sua sponte* Count II of the Second Amended Complaint for failure to state a claim upon which relief can be granted.

### B. *Count VIII of the Second Amended Complaint*

Count VIII alleges a civil RICO claim based on the claim alleged in Count II, which is incorporated in Count VIII, and seven "coal mining schemes" which allegedly date "from early 1978 on." Second Amended Complaint, ¶¶ 237–240. The defendants argue that Count VIII is barred by the applicable statute of limitations because it alleges claims arising out of acts, events, and occurrences separate and independent of those set forth in previously-dismissed Count II and therefore, the allegations do not relate back to the time plaintiffs filed the original complaint.

Defendants argue that the allegations involving the coal mining investments in Count VIII are new because none of the RICO allegations relating to the coal mining investments appeared in the complaint originally filed on December 27, 1988 and none appeared in the Amended Complaint filed on April 25, 1989. Defendants argue that the coal mining limited partnerships did not arise out of "the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading" which addressed a transaction involving a limited partnership owning an interest in an apartment building. Defendants' Memorandum in Support of Motion to Dismiss ("Defendants' Memorandum"), at 5. Accordingly, defendants argue, the amendment does not "relate back to the date of the original pleading." *Id.*

In the context of a motion to dismiss, the court must view the complaint's allegations in the light most favorable to the plaintiffs. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). The court takes as true all well-pleaded facts and allegations in the plaintiffs' complaint, *Ed Miniat, Inc., v. Globe Life Ins. Group, Inc.,* 805 F.2d 732, 733 (7th Cir.1986), *cert. denied,* 482 U.S. 915,

107 S.Ct. 3188, 96 L.Ed.2d 676 (1987), and the plaintiffs are entitled to all reasonable inferences that can be drawn from the complaint. *Ellsworth v. Racine,* 774 F.2d 182, 184 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986). It is with these standards in mind that the court must consider defendants' instant argument that the new allegations in plaintiffs' Second Amended Complaint do not relate back to the date the plaintiffs filed the original complaint.

Pleading is no longer a formalistic game. Rule 15(c) allows relation back if the actions described in the amended pleading "arose out of the conduct ... *attempted to be set forth* in the original pleading...." (emphasis added). This rule is to be liberally construed. Although the allegations involving the coal mining transactions are new, the court concludes that the new allegations can be characterized as the same conduct, transaction or occurrence as that attempted to be set forth in the previous complaint. The original complaint and the First Amended complaint involved the alleged inducement of investors into a fraudulent investment scheme by defendants including Litwin and C & E. So do the new allegations in Count VIII involving the coal deals. Accordingly, Count VIII relates back to the date of filing of the original complaint, December 27, 1988.

The statute of limitations for causes of action arising under civil RICO is four years. *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* 483 U.S. 143, 156, 107 S.Ct. 2759, 2767, 97 L.Ed.2d 121 (1987); *McCool v. Strata Oil Co.,* 972 F.2d 1452, 1457 (7th Cir.1992). To determine whether plaintiffs claims are timely, however, the court must ascertain when plaintiffs' cause of action accrued. According to *McCool v. Strata Oil Co.,* 972 F.2d 1452 (7th Cir.1992), "a RICO claim accrues when the plaintiff discovers her injury, even if she has not yet discovered the pattern of racketeering." *Id.* at 1465. "There must, of course, be a pattern of racketeering before the plaintiff's RICO claim accrues...." *Id.* In other words, a pattern of racketeering must exist for the cause of action to accrue, but the

plaintiff need not have discovered the pattern.

The parties disagree about when the plaintiffs' cause of action accrued. Defendants argue that at the latest, the plaintiffs were put on notice of the need for inquiry in mid–1981, or shortly afterward, when it was apparent that no coal mining had begun. Defendants' Memorandum, at 6. Accordingly, defendants argue that plaintiffs had four years—until 1985—to assert a cause of action. *Id.* Plaintiffs respond that this lawsuit is "not about coal deals" because plaintiffs seek to recover only from injuries allegedly incurred from the Wilkes Barre partnership offering and the Wilkeswood apartments. Response of Plaintiffs to the Motion to Dismiss ("Plaintiffs' Response"), at 5–6. Since we must take plaintiffs allegations as true, the court must assume that plaintiffs did not discover their injury from the WBA investment until shortly before they filed this case in 1988.[4] Accordingly, defendants' motion to dismiss Count VIII as time-barred is denied.

## C. *Remaining Counts*

Because the court denies defendants' motion to dismiss Count VIII, we turn to the remaining state law claims over which the court retains supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The defendants claim that certain of the remaining counts should be dismissed for failure to comply with the particularity requirements in Rule 9(b). In the alternative, defendants argue that certain of the remaining counts are time-barred by the applicable statute of limitations or fail to state a claim. The court will address each of these arguments in turn.

### 1. *Particularity Requirement of Rule 9(b)*

Defendants argue that the plaintiffs have failed to allege certain counts with the particularity required by Federal Rule of Civil Procedure 9(b). Specifically, defendants argue that the plaintiffs have failed to allege the circumstances of the alleged breach of fiduciary duty in Count III, the alleged fraud

in Count IV and the deceptive or fraudulent conduct on the part of Litwin and C & E in Count VI. Defendants argue that the particularity requirement obligates plaintiffs to plead "who, what, when, where, and how." *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.), *cert. denied,* 498 U.S. 941, 111 S.Ct. 347, 112 L.Ed.2d 312 (1990); *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1230 n. 2 (N.D.Ill.1990).

Plaintiffs argue that defendants have waived any Rule 9(b) argument they may have had by answering plaintiffs' previous complaint. In the alternative, plaintiffs argue that the Second Amended Complaint does satisfy the requirements of Rule 9(b).

The court disagrees with plaintiffs' argument that defendants waived the Rule 9(b) argument by answering the previous complaint. Defendants have not answered the Second Amended Complaint, and any previous answer filed is irrelevant now. However, the court agrees with plaintiffs that defendants' arguments fail on the merits.

The purposes of Rule 9(b) are "(1) to inform the defendants of the nature of the claimed wrong and enable them to formulate an effective response and defense; (2) to eliminate the filing of a conclusory complaint as a pretext for using discovery to uncover wrongs; and (3) to protect defendants from unfounded charges of fraud which may injure their reputations." *Reshal Associates, Inc. v. Long Grove Trading Co.,* 754 F.Supp. 1226, 1230 (N.D.Ill.1990). Although allegations of fraud must be stated with particularity, plaintiffs need only describe the outline of the fraudulent scheme in a securities fraud case. *Scholes v. Stone, McGuire and Benjamin,* 786 F.Supp. 1385, 1396 n. 9 (N.D.Ill. 1992). Furthermore, plaintiffs need not precisely identify the timing of each allegation "but merely an appropriate time frame." *I.S.K., Inc. v. Knapp,* 1991 WL 65927, *5, 1991 U.S.Dist. LEXIS 5338, *14 (N.D.Ill. April 22, 1991). Thus, the court rejects defendants' argument that certain counts

---

4. This is not the "law of the case" as plaintiff suggests, however. It is merely a premise from which the court must operate when deciding a

motion to dismiss. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).

should be dismissed for failure to satisfy the Rule 9(b) particularity requirement.

### 2. *Statute of Limitations/Failure to State a Claim*

#### a. *Count III: Breach of Fiduciary Duty*

■ Defendants argue that Count III is time-barred. The statute of limitations for breach of fiduciary duty in Illinois is five years. 735 ILCS 5/13–205 (1993) (previously cited as ILL.REV.STAT. ch. 110, ¶ 13–205); *Superior Bank, FSB v. Golding,* 152 Ill.2d 480, 178 Ill.Dec. 720, 605 N.E.2d 514 (1992). Defendants argue that the plaintiffs' cause of action for breach of fiduciary duty accrued in 1981 when Litwin prepared the relevant documents for the plaintiffs in connection with Wilkes Barre or, at the latest, in February 1983 when Stavriotis was asked by certain plaintiffs to remit a portion of his interest in PRC to them. Since plaintiffs did not file their original complaint until December 1988, defendants argue Count III should be dismissed as time-barred.

Plaintiffs argue that their claim for breach of fiduciary duty is timely because the five-year limitations set forth in section 13–205 does not accrue until the plaintiff knew or reasonably should have known that it was injured and the injury was wrongfully caused. *Superior Bank,* 178 Ill.Dec. at 724, 605 N.E.2d at 518. Furthermore, plaintiffs argue that generally "the determination when an injured party knows or should have known of his injury and that it was wrongfully caused is a question of fact." *Santa Claus Industries, Inc. v. First National Bank,* 216 Ill.App.3d 231, 159 Ill.Dec. 657, 661, 576 N.E.2d 326, 330 (1991). Thus, plaintiffs argue that the defendants "err when they say that each plaintiff's claim accrued in 1981 when the offering documents were prepared." Plaintiffs' Response, at 11. Plaintiffs claim the offering documents concealed rather than revealed the fraud and plaintiffs did not know of their injury or that it was wrongfully caused before December 1983 (5 years before the filing of the original complaint). *Id.* The court will not consider defendants' argument that plaintiffs' claim accrued when they asked Stavriotis to remit a portion of his interest because this factual assertion is not in the complaint, and therefore it is not properly before the court on a motion to dismiss.

■ The court agrees with the plaintiffs that when plaintiffs' cause of action for breach of fiduciary duty accrued is a question of fact and therefore not appropriate on a motion to dismiss. The statute of limitations begins to run when a person knows or reasonably should have known of his or her injury and "the point at which the injured person has sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Santa Claus,* 159 Ill.Dec. at 660–61, 576 N.E.2d at 329–30. Since we must view the complaint's allegations in the light most favorable to the plaintiff, the court cannot determine at this time the date their cause of action accrued. Accordingly, defendants' motion to dismiss Count III is denied.

#### b. *Count IV: Fraud, Fraudulent Inducement and Fraudulent Misrepresentation*

■ Defendants argue that Count IV is time-barred for the same reasons Count III should be time-barred. The statute of limitations for fraud, fraudulent inducement and fraudulent misrepresentation is five years. *Melko v. Dionisio,* 219 Ill.App.3d 1048, 162 Ill.Dec. 623, 628, 580 N.E.2d 586, 591 (1991) (five year statute of limitations applies to claims of common law fraud); 735 ILCS 5/13–205 (1993) (previously cited as ILL.REV. STAT. ch. 110, ¶ 13–205). Plaintiffs argue that Count IV is timely for the same reason Count III is timely.

The court agrees that the same reasoning applies to Counts III and IV; therefore, defendants' motion to dismiss Count IV is denied.

#### c. *Count V: Negligent Misrepresentation and Malpractice*

Defendants argue that since Litwin practiced law in the State of New Jersey and C & E maintained its offices in New Jersey, New Jersey law should apply to Count V. The New Jersey statute of limitations for legal

malpractice is six years. N.J.STAT.ANN. § 2A:14–1. Plaintiffs argue that the Illinois statute of limitations applies to this claim. Under Illinois law the statute of limitations for negligent misrepresentation is five years. 735 ILCS 5/13–205 (1993) (previously cited as ILL.REV.STAT. ch. 110, ¶ 13–205).

The court agrees with plaintiffs that the Illinois statute of limitations applies in this case. Like a district court exercising diversity jurisdiction, a district court exercising supplemental jurisdiction applies the law of the state in which it sits, including that state's choice of law rules. *E.g., Stavriotis v. Litwin,* 710 F.Supp. 216, 217 (N.D.Ill.1988), *aff'd, Carmel v. Clapp &·Eisenberg,·P.C.,* 960 F.2d 698 (7th Cir.1992). In choosing a statute of limitations, the forum state's statute of limitations applies unless the borrowing statute provides otherwise. The Illinois Borrowing Act bars a cause of action in Illinois that cannot be maintained in the jurisdiction where the cause of action arose by reason of the lapse of time. *Id.;* 735 ILCS 5/13–210 (1993) (previously cited as ILL.REV.STAT. ch. 110, ¶ 13–210). However, the Illinois Borrowing Act does not apply in this case because the New Jersey statute of limitations is longer than that of Illinois. *E.g., Stavriotis v. Litwin,* 710 F.Supp. at 218. The defendants incorrectly state that the court in *Stavriotis v. Litwin* applied Illinois conflicts of law rules to determine that New Jersey law applied to a substantially identical set of circumstances. Defendants' Memorandum, at 12. Actually the *Stavriotis* court held that although New Jersey was the state with the most significant relationship, the Illinois statute of limitations applied to that action because the statute of limitations in New Jersey was longer than that in Illinois. *Stavriotis,* 710 F.Supp. at 219–20. The same reasoning applies here.

Having concluded that Illinois law applies, we turn to defendants' argument that the plaintiffs' allegations demonstrate that they knew or should have known of the facts underlying their negligence-malpractice cause of action as long ago as 1981, when Litwin prepared the offering documents at issue. Defendants argue that the private placement memorandum, which plaintiffs al-

lege they received in 1981, contained Litwin's tax opinions that form the basis of plaintiffs' legal malpractice action and provided ample "storm warnings" about the uncertainty of the Internal Revenue Code provisions at issue and the deductibility of the plaintiffs' investments. Defendants' Memorandum, at 13. Plaintiffs argue that the prospectus did not put any of the plaintiffs on notice of a claim as the defendants argued. Plaintiffs' Response, at 13.

"Under Illinois law a cause of·action for professional negligence by a lawyer does not accrue until the client discovered or should have discovered the negligence." *Stavriotis v. Litwin,* 710 F.Supp. at 220 (citing *Bonanno v. Potthoff,* 527 F.Supp. 561 (N.D.Ill. 1981)). Plaintiffs allege that they "did not have reason to even begin to question whether the material aspects of the offering were properly disclosed until they were informed that the IRS was contesting the legitimacy of certain tax deductions" and they "did not learn of the nature of the restructuring of the transaction until the latter part of 1988 when they obtained the underlying documents." Second Amended Complaint, ¶ 31. Since the court must take plaintiffs' allegations as true in the context of a motion to dismiss, we deny defendants' motion to dismiss Count V.

### d. *Count VI: Consumer Fraud and Deceptive Business Practices*

Defendants argue that plaintiffs have failed to state a claim for relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 (1993) *et seq.* (previously cited as ILL.REV. STAT. ch. 121½, ¶ 261), because the Act does not apply to the provision of legal services and, at all times relevant, Litwin and C & E were engaged in the practice of law. Defendants' Memorandum, at 14 (citing *Lurz v. Panek,* 172 Ill.App.3d 915, 123 Ill.Dec. 200, 527 N.E.2d 663 (1988) and *Guess v. Brophy,* 164 Ill.App.3d 75, 115 Ill.Dec. 282, 517 N.E.2d 693 (1987)). Plaintiffs agree that attorneys are not liable to their clients under the Consumer Fraud Act when the matter involves the relationship between a client and its·attorney because the practice of law is not "trade or commerce." Plaintiffs' Response,

at 14 n. 10. But plaintiffs argue that defendants' argument is inapplicable in this case because the Act applies to securities violations. *Id.* (citing *Endo v. Albertine,* 812 F.Supp. 1479, 1495 (N.D.Ill.1993)). Thus, plaintiffs contend that Litwin did not act exclusively as a lawyer because he aided and abetted the fraudulent securities sale. Plaintiffs' Response, at 14 n. 10 (citing *Armstrong v. Edelson,* 718 F.Supp. 1372, 1377 (N.D.Ill. 1989) (denying motion to dismiss claim of aiding and abetting a violation of section 2 of the Consumer Fraud Act)).

As the court stated in *Pucci v. Santi,* 711 F.Supp. 916 (N.D.Ill.1989), *summary judgment granted,* 723 F.Supp. 56 (N.D.Ill.1989), "the mere fact that a person has gained admission to the bar does not grant him an exclusion from the Act's proscriptions." *Id.* at 926. Nonetheless, in that case the court granted the motion to dismiss the Consumer Fraud and Deceptive Business Practices Act claim because the plaintiffs' allegations demonstrated that they were "charging wrongdoing in the provision of legal services." *Id.* See *Frahm v. Urkovich,* 113 Ill.App.3d 580, 69 Ill.Dec. 572, 447 N.E.2d 1007 (1983). In the instant case, plaintiffs also charge wrongdoing in the provision of legal services. However, the court cannot conclude, since we must construe things most favorably to the plaintiffs on a motion to dismiss, that all of plaintiffs' claims against Litwin and C & E relate exclusively to the provision of legal services, particularly since plaintiffs allege that Litwin shared in the profits earned by the Pennsylvania Realty Consultants ("PRC"). Second Amended Complaint, at ¶ 29.

■ In the alternative, defendants argue that even if the plaintiffs' allegations in Count VI state a claim, the claim is time-barred for the same reasons as Counts III and IV. A three year statute of limitations applies to the Illinois Consumer Fraud Act. 815 ILCS 505/10a(e) (1993) (previously cited as Ill.Rev.Stat. ch. 121½, ¶ 270a(e)). Plaintiffs claim that Count VI is timely because accrual of this claim is subject to a "discovery rule." *Bradley v. Alpine Construction Co.,* 224 Ill.App.3d 432, 166 Ill.Dec. 695, 697, 586 N.E.2d 653, 655 (1991).

The court agrees with the plaintiffs. The "discovery rule" provides that the statute of limitations "begins to run at the time when the plaintiff knows or reasonably should know that the injury was wrongfully caused." *Bradley v. Alpine Construction Co.,* 166 Ill. Dec. at 697, 586 N.E.2d at 655 (citations omitted). Several Illinois courts have applied the "discovery rule" to causes of action brought under the Consumer Fraud Act. *Id.* (citations omitted). Thus, for the reasons set forth above, the motion to dismiss is denied as to Count VI.

#### e. *Count VII: Constructive Trust*

Defendants argue that Count VII fails to set forth a claim upon which relief may be granted because a "constructive trust" is a remedial tool, used when "fraud is proved or when advantage is taken of a fiduciary relationship." *Anderson v. Lybeck,* 15 Ill.2d 227, 154 N.E.2d 259, 262 (1958). Therefore, defendants contend that in order to obtain the constructive trust remedy, the plaintiffs must prevail on one or more of their legally cognizable claims. Plaintiffs respond that defendants' own cases hold that there is a cause of action for constructive trust. *Hagney v. Lopeman,* 147 Ill.2d 458, 168 Ill.Dec. 829, 831, 590 N.E.2d 466, 468 (Ill.1992).

■ The court agrees with the defendants that constructive trust is an equitable remedy, not a cause of action. *See Anderson v. Lybeck,* 15 Ill.2d 227, 154 N.E.2d 259, 262 (1958). A constructive trust "is imposed by a court of equity to prevent a person from holding for his own benefit an advantage which he has gained by reason of a fiduciary relationship or by fraud. Such a trust arises only when that fraud is proved or when advantage is taken of a fiduciary relationship by the dominant party." *Id.* *Hagney v. Lopeman,* cited by plaintiffs, is not inapposite. In *Hagney,* the plaintiffs sought a constructive trust where the trial court had found that the defendant had breached his fiduciary responsibility. *Hagney,* 168 Ill. Dec. at 833, 590 N.E.2d at 470. Since each count must set forth a separate cause of action, the court grants defendants' motion to dismiss as to Count VII for failure to state a claim upon which relief can be granted.

### III. *CONCLUSION*

For the foregoing reasons, the court has dismissed *sua sponte* Counts I and II of the Second Amended Complaint. Defendants' motion to dismiss is denied with prejudice as to Counts III, IV, V, VI and VIII and granted as to Count VII.